Chambers v. Moses H. Cone Mem'l Hosp., 2022 NCBC 61.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF GUILFORD<br><br>CHRISTOPHER CHAMBERS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE MOSES H. CONE MEMORIAL HOSPITAL; THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION d/b/a MOSES CONE HEALTH SYSTEM and d/b/a CONE HEALTH; and DOES 1 through 25, inclusive,<br><br>Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>12 CVS 6126<br><br><br><br>**ORDER AND OPINION ON MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT AND PETITION FOR ATTORNEYS' FEES** |

1. Pending are Plaintiff Christopher Chambers's motion for final approval of a settlement of this class action and his related petition for attorneys' fees and expenses. (ECF Nos. 148, 150.) Both are unopposed. For the reasons given below, the Court enters this Order and Final Judgment and thereby **APPROVES** the proposed settlement, **DISMISSES** all class claims, and **GRANTS** the fee petition.

> *Higgins Benjamin PLLC, by John F. Bloss, and Law Offices of Barry L. Kramer, by Barry L. Kramer (pro hac vice), for Plaintiff Christopher Chambers.*
>
> *Womble Bond Dickinson (US) LLP, by Philip Mohr and Brent F. Powell, for Defendants The Moses H. Cone Memorial Hospital and The Moses H. Cone Memorial Hospital Operating Corporation.*

Conrad, Judge.

# I.
# BACKGROUND

In August 2011, Chambers had an emergency appendectomy at the Moses H. Cone Memorial Hospital ("Moses Cone"). He was uninsured at the time. Before receiving treatment, he signed a standard form contract, which required him to pay all charges in accordance with Moses Cone's "regular rates and terms." Moses Cone later sent Chambers a bill for more than $14,000. According to Chambers, this amount was excessive. He believes that the phrase "regular rates" in Moses Cone's form contract is meaningless and that his bill was based on "artificially and grossly excessive Chargemaster rates." In May 2012, Chambers sued Moses Cone and its parent company on the ground that it overcharged him and a class consisting of other self-pay patients who received emergency care. (*See* Am. Compl. ¶¶ 12, 25, 27, 42, ECF No. 49.)

There is no need to recite the entire procedural history of this case, which now spans over ten years. Readers may find detailed discussions of the original claims, later amendments, judicial rulings, and appeals in earlier decisions of this Court and the North Carolina Supreme Court. *See generally Chambers v. Moses H. Cone Mem'l Hosp.*, 374 N.C. 436 (2020); *Chambers v. Moses H. Cone Mem'l Hosp.*, 2021 NCBC LEXIS 106 (N.C. Super. Ct. Dec. 3, 2021); *Chambers v. Moses H. Cone Mem'l Hosp.*, 2021 NCBC LEXIS 63 (N.C. Super Ct. July 19, 2021); *Chambers v. Moses H. Cone Mem'l Hosp.*, 2017 NCBC LEXIS 22 (N.C. Super. Ct. Mar. 13, 2017).

In short, all that remains is a class claim for declaratory judgment. Chambers seeks declarations, on behalf of the putative class, that Moses Cone's form

contract includes an open price term, that it may not bill self-pay patients at Chargemaster rates, and that it is entitled only to the reasonable value of its services. He asserts the claim on behalf of a class of similarly situated self-pay patients. (*See* Am. Compl. ¶¶ 28, 31, 40, 41.)

5.  In April 2022, the parties agreed to a proposed settlement. Chambers then filed an unopposed motion for preliminary approval of the settlement agreement and conditional class certification. (*See* ECF Nos. 141, 141.1.) On 6 June 2022, the Court entered an order that (1) preliminarily approved the settlement agreement; (2) conditionally certified the settlement class, (3) directed that notice be given to putative class members, (4) set a schedule for submission of a motion for final settlement approval and of any objections, and (5) scheduled a hearing to determine the fairness, reasonableness, and adequacy of the terms of the settlement. (*See generally* Order Preliminarily Approving Class Action Settlement and Scheduling Order, ECF No. 146.)

6.  On 23 August 2022, Chambers timely filed an unopposed motion for final approval of the settlement. That same day, he also filed an unopposed petition for attorneys' fees and expenses. (ECF Nos. 148, 150.)

7.  On 22 September 2022, the Court held the fairness hearing, at which counsel for Chambers and Moses Cone appeared. Neither the Court nor the parties received any objection to the settlement before, during, or after the hearing. No member of the proposed class attended the hearing.

8.      Based on the parties' submissions and the representations of counsel at the hearing, it appears that notice was sent to 473 class members, some of which have been returned as undeliverable.  It further appears that counsel for Moses Cone inadvertently informed counsel for Chambers of the undeliverable notices after the deadline for doing so had passed.  Even so, counsel consulted a publicly available database to locate current addresses for these class members.  Only four new addresses were discovered.  Counsel for both sides represented that it was impracticable to send supplemental notices to these newly discovered addresses in keeping with the schedule set by the Court.  They further agree that the efforts to give notice to class members were adequate and that due process has been satisfied.

II.
CLASS CERTIFICATION AND SETTLEMENT APPROVAL

9.      A class-action settlement raises "unique due process concerns" because it binds individuals who have not appeared in the litigation; thus, "parties cannot settle a class action without court approval." *Ehrenhaus v. Baker*, 216 N.C. App. 59, 72 (2011) ("*Ehrenhaus I*").  The parties have asked the Court to certify a settlement class and to approve their settlement as fair, reasonable, and adequate.

10.     **<u>Class Certification.</u>**  Rule 23 of the North Carolina Rules of Civil Procedure governs class certification.  Under that rule, a court may certify a class action if the following requirements are met:

> (1) the existence of a class, (2) the named representatives will fairly and adequately represent the interests of all class members, (3) there is no conflict of interest between the representative and class members, (4) class members outside the jurisdiction will be adequately represented, (5) the named party has a genuine personal interest in the outcome of the litigation, (6) class members are so numerous that it is

impractical to bring them all before the court, and (7) adequate notice of the class action is given to class members.

*Moss v. Towell*, 2018 NCBC LEXIS 20, at \*6 (N.C. Super. Ct. Mar. 6, 2018) (quoting *In re PokerTek Merger Litig.*, 2015 NCBC LEXIS 10, at \*9 (N.C. Super. Ct. Jan. 22, 2015)) (cleaned up); *see also* N.C. R. Civ. P. 23.

11. Having considered all matters of record, the Court concludes that these requirements have been met here and that certification of the settlement class is appropriate.

12. Because "the named and unnamed members each have an interest in either the same issue of law or of fact" and "the issue predominates over issues affecting only individual class members," a class exists. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 280 (1987). The Court finds that Chambers, as class representative, and his counsel fairly and adequately represented the interests of all class members; that there is no conflict of interest between Chambers and the class members; that it would be impractical to bring the nearly 500 class members before the Court; and that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

13. The Court further finds that the class members received fair and adequate notice. The parties gave notice in the manner directed by the order preliminarily approving the settlement. This notice fairly, accurately, and reasonably informed members of the settlement class of their rights and of the consideration they were to receive. Considering the number of class members involved and the age of the claims, the Court determines that the form and manner of the notice is the best notice

practicable under the circumstances and therefore satisfies due process. Likewise, the Court determines that it does not violate due process to include those class members who did not receive actual notice because of mailings returned as undeliverable. *See Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 14 (1995) (holding that the trial court did not err in including class members whose notices were returned undeliverable).

14. The only remaining claim is for declaratory judgment. "When the class representative seeks injunctive or declaratory relief, a non-opt-out class is necessary 'to avoid unnecessary inconsistencies and compromises in future litigation.'" *Ehrenhaus I*, 216 N.C. App. at 79 (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995)). Given that only declaratory relief is at issue, the parties have asked the Court to certify a non-opt-out class, and the Court concludes that it would be appropriate to do so.

15. Accordingly, the Court certifies the following non-opt-out class for settlement purposes only (all defined terms are found in the settlement agreement, ECF No. 141.1):

> All ED Patients who: (1) obtained treatment from one of Defendants' emergency departments during the Applicable Time Period; and (2) had an Account Balance as of 25 April 2022. For clarity, the Settlement Class shall not include any ED Patient seen prior to or after the Applicable Time Period. Moreover, the Settlement Class shall not include any ED Patient seen during the Applicable Time Period whose Original Bill: a) has previously been written off in full; b) was paid in full; c) was paid in whole or in part by a third-party insurance provider, Medicare, or Medicaid; or d) is the subject of a prior judgment or a Prior Resolution.

16. Finally, the Court confirms its preliminary appointment of Chambers as the class representative and his counsel—John F. Bloss of Higgins Benjamin, PLLC and Barry Kramer of the Law Offices of Barry Kramer—as class counsel.

17. **Settlement Approval.** "[P]ublic policy considerations favor the settlement of lawsuits," including class actions. *Ehrenhaus v. Baker*, 243 N.C. App. 17, 30 (2015) ("*Ehrenhaus II*"). Accordingly, courts tend to favor settlement of class actions so long as "there has been fair notice," there has been "an opportunity for class members to object," and "the settlement terms are fair, reasonable, and adequate." *In re Krispy Kreme Doughnuts S'holder Litig.*, 2018 NCBC LEXIS 1, at *12 (N.C. Super. Ct. Jan. 2, 2018).

18. Courts consider a variety of factors when making this determination, including:

> (a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed settlement, (f) counsel's opinions, and (g) the stage of proceedings and how much discovery has been completed.

*In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *21–22 (N.C. Super. Ct. Nov. 22, 2016). "[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Ehrenhaus I*, 216 N.C. App. at 74 (citation and quotation marks omitted).

19. Applying these factors, the Court finds the settlement to be fair, reasonable, adequate, and in the best interest of the class. This litigation began more than ten years ago and has been closely contested. Throughout that time, the parties have

been represented by skilled counsel with substantial experience in complex class-action litigation. The parties have engaged in substantial discovery, briefed and argued numerous motions, and litigated an appeal on a novel issue of law before the North Carolina Court of Appeals and the North Carolina Supreme Court. Moses Cone has at all times disputed, and continues to dispute, the allegations in the amended complaint, denying liability for any claims that have been or could have been alleged by Chambers or class members. With class certification, summary judgment, and trial yet to come, it is a certainty that this litigation would have demanded substantial additional time and resources to resolve absent a voluntary settlement.

20. Moreover, the settlement offers substantial benefits to the class. It provides, among other things, that each class member will receive a fifty percent reduction of his or her original bill as well as credit for any payments previously made by the patient or a third-party. (ECF No. 141.1, ¶ 2.1.) This is akin to the rate that insured patients received during the relevant period and is essentially the relief that Chambers has sought from the outset of litigation. Whether Chambers could have achieved the same result through continued litigation is uncertain. A better result would have been highly unlikely, as his counsel acknowledged at the hearing. Thus, Chambers and his counsel reasonably determined that this settlement achieves relief that is in the best interest of the class and far preferable to the uncertainty and expense of continued litigation. *See Ehrenhaus I*, 216 N.C. App. at 93 ("[T]he opinion

of experienced and informed counsel is entitled to considerable weight." (citation and quotation marks omitted)).

21. All parties consent to the settlement, and no member of the class raised an objection to the settlement after receiving notice. In addition, it is clear, and the Court concludes, that the settlement resulted from the parties' arms-length negotiations and is not the product of collusion.

22. Accordingly, having considered the terms of the parties' agreement and the resulting settlement in light of (1) the issues presented by the pleadings; (2) the record; (3) the complexity of the proceedings; (4) the defenses asserted by Moses Cone; (5) the possibility that Moses Cone would successfully defend against claims arising out of the facts and legal theories pleaded and asserted, whether litigated by members of the class or on their behalf; and (6) the length of time that would be required for members of the class, or any group of members of the class, to obtain a final judgment through one or more trials and appeals, the Court finds that class counsel's decision to settle the case on the terms reached by the parties is reasonable and prudent. The settlement is fair, reasonable, and adequate, and it is in the best interest of the class. The Court therefore grants the motion to approve the settlement.

III.
FEE PETITION

23. As part of the settlement agreement, Moses Cone has agreed to pay up to $75,000 in reasonable attorneys' fees to Chambers's counsel. The parties ask the Court to approve this provision and to grant Chambers's fee petition.

24. The North Carolina Court of Appeals has held that "parties to a class action may agree to a fee-shifting provision in a negotiated settlement that is—like all other aspects of the settlement—subject to trial court's approval in a fairness hearing." *Ehrenhaus II*, 243 N.C App. at 30. The trial court must "carefully assess the award of attorneys' fees to ensure that it is fair and reasonable." *Id.*

25. Our courts routinely look to Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar when considering the reasonableness of requested attorneys' fees. *See, e.g., In re Newbridge Bancorp S'holder Litig.*, 2016 NCBC LEXIS 91, at *38. This rule identifies the following eight factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the service; and
>
> (8) whether the fee is fixed or contingent.

N.C. Rev. R. Prof. Conduct 1.5(a); *see also Ehrenhaus I*, 216 N.C. App. at 96–97. Applying these factors, the Court concludes that the fee-shifting provision is fair and reasonable and that the requested amount is not excessive.

26. The record shows that Chambers's counsel devoted a total of 446.2 hours to litigating this case, not including time devoted to the motion for final approval and the fee petition. (*See* Pl.'s Pet. for Attorneys' Fees & Expenses, Exs. A, B, ECF No.

150.) Over the course of ten years, counsel have conducted extensive discovery, successfully defended against multiple attempts by Moses Cone to dismiss the action, and prevailed in an appeal of a novel issue before the North Carolina Supreme Court. The Court finds that the time expended was reasonable in light of the length and complex nature of this litigation.

27. In addition, the nature of the claims required skilled counsel with experience in complex class-action litigation. The Court finds that Chambers's counsel have substantial experience litigating complex civil actions and serving as class counsel.

28. The rates charged by Chambers's counsel are reasonable when compared with fees customarily charged for complex commercial litigation in North Carolina by attorneys with similar education, training, and experience. Mr. Bloss, a North Carolina attorney, ordinarily charges an hourly rate of $350.00. Mr. Kramer, a Nevada attorney, ordinarily charges an hourly rate of $600.00. At these rates, the combined value of their 446.2 hours in time expended would be $196,670. A discounted award of $75,000, as requested in the fee petition, would yield an implied average hourly rate of $168.08. Although Chambers did not offer an affidavit expressly identifying the rates customarily charged in this locality, the Court notes that Moses Cone has experienced North Carolina counsel who consented to the petition and agrees that the discounted, blended rate is reasonable. The Court further notes that numerous recent decisions have determined that typical fees charged in North Carolina for handling complex commercial litigation exceed $250

and often range as high as $550 per hour. *See, e.g., In re Newbridge Bancorp S'holders Litig.*, 2016 NCBC LEXIS 91, at \*43–44; *In re PokerTek Merger Litig.*, 2015 NCBC LEXIS 10, at \*23; *In re Harris Teeter Merger Litig.*, 2014 NCBC LEXIS 47, at \*25 (N.C. Super. Ct. Sept. 24, 2014).

29. In addition, the Court finds that Chambers's counsel undertook the representation with no assurance of payment, advanced $1,705.59 in expenses, and expended considerable time defending against various motions filed by Moses Cone. Moreover, the requested fees reflect an appropriate recognition of the value of the dispute and the results obtained. These considerations weigh in favor of approval of the requested fee.

30. The Court also finds that the notice provided to the settlement class contained information regarding the fee-shifting provision. No class member filed an objection to the fee petition or appeared at the fairness hearing to oppose fee shifting. This, too, weighs in favor of approval of the requested fee.

31. Having considered the complexity of the litigation, the time and labor expended, the experience, the reputation and ability of counsel, and the skill required to litigate such a complex case, the Court concludes that the fee sought here is reasonable in light of the amount customarily charged in North Carolina and is not excessive. Thus, the Court grants the fee petition and approves a payment of fees and expenses in the amount of $75,000.00 as part of the class-wide settlement.

## IV.
## CONCLUSION

32.    For these reasons, the Court **GRANTS** the unopposed motion for final approval of the parties' settlement agreement:

a.    The Court **CERTIFIES** the class, as defined above, for purposes of the settlement only.

b.    Based on the findings and conclusions above, the Court finds that the settlement is fair, reasonable, adequate, and in the best interest of the settlement class.  The Court therefore **APPROVES** the settlement.

c.    The parties are authorized and directed to comply with and to consummate the settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Order as a Final Judgment in this action.

d.    Nothing in this Order and Final Judgment shall be construed, deemed, or offered as an admission by any of the parties, or by any member of the settlement class, for any purposes in any judicial or administrative action or proceeding, whether in law or in equity.

e.    The action is **DISMISSED WITH PREJUDICE** in its entirety on the merits, and except as provided in the settlement, without fees, costs, and expenses beyond those approved herein.

f.    Chambers and each class member shall be deemed to have and by operation of this Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Defendants and their

present, former, and future, direct and indirect, parents, subsidiaries, affiliates, assigns, divisions, predecessors, and successors, and all of their respective officers, agents, administrators, and employees, and Defense Counsel, of and from all Released Claims (as defined in the settlement agreement), provided however, that Released Claims shall not include any claim to enforce the terms of the settlement.

g. Chambers and all class members are permanently barred and enjoined from commencing, prosecuting, instigating, assisting, or in any way participating in the commencement or prosecution of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any released person or entity.

h. If this Order and Final Judgment is terminated, overturned, or materially modified on appeal, the parties shall revert to their litigation positions immediately prior to the execution of the settlement agreement, without waiver of any rights, claims, or defenses.

i. Without affecting the finality of this Order and Final Judgment, the Court retains continuing jurisdiction over all parties to the settlement for the purpose of construing, enforcing, and administering this Order and Final Judgment.

33.   In addition, the Court **GRANTS** Chambers's petition for attorneys' fees and expenses.  Moses Cone shall pay $75,000 to Chambers's counsel within twenty-one days following the entry of this Order and Final Judgment.

**SO ORDERED**, this the 19th day of October, 2022.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases